IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD E. SCHILL, JR.<br>37 Rose Street<br>Chambersburg, PA 17201 | :<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | No. _____ |
| v. | :<br>:<br>: | **JURY TRIAL DEMANDED** |
| TARGET CORPORATION d/b/a<br>TARGET DISTRIBUTION CENTER<br>3001 Archer Drive<br>Chambersburg, PA 17201 | :<br>:<br>:<br>:<br>: | |
| Defendant. | :<br>: | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Edward E. Schill, Jr. (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Target Corporation d/b/a Target Distribution Center (*hereinafter* referred to as "Defendant" unless indicated otherwise) for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA"),[1] and Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Target Corporation d/b/a Target Distribution Center is an upscale discount retailer with stores and distribution centers throughout the United States, including the location at which Plaintiff worked in Chambersburg, Pennsylvania (as identified in the above caption).

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was employed by Defendant for approximately two months, from in or about November of 2020 until his unlawful termination (discussed further *infra*) on or about January 23, 2021.

12. At the time of Plaintiff's termination, he was working as a Warehouse Picker at Defendant's Chambersburg, Pennsylvania distribution center.

13. Plaintiff was directly supervised by Operations Managers, Haidar Shbeeb (*hereinafter* "Shbeeb") and Caroline Davis (*hereinafter* "Davis") and generally supervised by Senior Operations Manager, Sean Roth (*hereinafter* "Roth").

14. Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

15. On or about January 10, 2021, Plaintiff sustained work-related injuries to his back (for which he is still treating). As a result, Plaintiff immediately informed Defendant's management and filed a worker's compensation claim.

16. As a result of his aforesaid work-related injuries/health conditions, Plaintiff was limited in his ability (at times) to perform some daily life activities, including but not limited to bending, lifting, and working (among other daily life activities).

17. Despite his aforementioned work-related injuries/serious health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

18. For example, after Plaintiff reported his aforesaid work-related injuries, he was escorted by Shbeeb to Medcor, an onsite health and clinical care service provider; however, they were essentially closed for the day, so he was only provided with an ice pack and ibuprofen for his injuries.

19. It was not until 2-3 days later, while in increasing pain, that he was evaluated by Medcor and advised to refrain from working for at least the remainder of the day, after which he could perform only light-duty work (i.e., sweeping the facility), and ice his injuries as needed.

20. Despite Medcor's recommendation that Plaintiff refrain from working for the remainder of the day, however, Roth informed Plaintiff that he needed to stay and sweep the floors, to which Plaintiff strongly objected that he did not want to further exacerbate or worsen his injuries. However, in fear of losing his job or accumulating an attendance "occurrence," he continued to work for the remainder of the day.

21. Thereafter, Roth assigned Plaintiff to light-duty housekeeping duties for subsequent shifts.

22. In response to Plaintiff's worker's compensation claims, request for initial light-duty work, and limited time off for doctor's appointments for same, Plaintiff experienced blatant

discrimination and retaliation from Roth, Shbeeb, and Davis. By way of example, but not intended to be an exhaustive list:

   a. There was initial reluctance to characterize Plaintiff's injury as worker's compensation, with Roth and Shbeeb blaming Plaintiff for his aforesaid work-related injuries/serious health conditions;

   b. Defendant's management exhibited clear frustration with Plaintiff needing limited time off for medical reasons post-injury; and

   c. While Plaintiff continued working light-duty after sustaining the aforesaid work-related injuries/serious health conditions, his work was criticized and scrutinized by Defendant's management.

23. Plaintiff objected to the aforementioned instances of discrimination and retaliation (particularly Roth's and Shbeeb's accusations that Plaintiff was to blame for his work-related injuries/serious health conditions) on more than one occasion leading up his termination.

24. Thereafter, on or about January 23, 2021, Plaintiff was abruptly terminated following inquiries he made to both Roth and Shbeeb about how much time he had remaining and/or the number of attendance occurrences he had been assessed in case he needed to take off to care for and treat his aforesaid work-related injuries/serious health conditions in the near future.

25. Defendant's purported rationale for Plaintiff's termination was allegedly "attendance issues" and "cursing," which is completely pretextual, because: (1) Plaintiff had worked hard for Defendant and performed his job well; (2) Plaintiff's alleged "attendance points" included those assessed for time off for his work-related injuries/serious health conditions; (3) Plaintiff and other employees regularly had difficulty with the clock-in machine working properly; as a result, Defendant's management often had to manually change clock-in times and often mistakenly assessed attendance points for same; and (4) when Plaintiff inquired to Shbeeb and

Roth regarding how much time he had remaining and/or the amount of occurrences he had been assessed, he was provided conflicting numbers by Shbeeb and Roth, which frustrated Plaintiff. Plaintiff then responded with "whatever" to Roth, but did not curse.

26. Furthermore, while Plaintiff and Roth engaged in heated discussion several weeks before his termination when Roth had blamed Plaintiff for his [Plaintiff's] work related injuries, both parties apologized to one another and Plaintiff was never issued any discipline for this incident. And although Defendant has accused Plaintiff of cursing on his last day of employment, this is simply not true and is an allegation that was fabricated by Defendant to conceal the fact that his termination was both discriminatory and retaliatory.

27. Moreover, cursing was a common occurrence in the workplace. Employees, supervisors, and upper management consistently swore in the workplace and upon information and belief were never terminated for the same.

28. In fact, on at least one occasion, Plaintiff witnessed a non-disabled employee yell in Roth's presence "I am tired of this fucking place," and the "fucking managers need to get their shit together"; however, Roth simply walked away and, upon information and belief, the employee was never disciplined and/or terminated for same. Additionally, Plaintiff witnessed at least one other non-disabled employee refer directly to Davis as a "bitch"; yet, upon information and belief, this employee was not subjected to discipline or termination either.

29. Leading up to his termination, Defendant failed to properly accommodate Plaintiff by assessing attendance points against him for taking intermittent time off to care for and treat his aforesaid work-related injuries/serious medical conditions.

30. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated because of (1) his known, perceived and/or record of disabilities; (2) in retaliation for requesting/utilizing reasonable medical accommodations; (3) his expressed

objections to unfair treatment as a result of his disabilities and/or requests for accommodations; and (4) Defendant's failure to properly accommodate his health conditions (set forth *supra*).

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment; [3] Retaliation; and [4] Failure to Accommodate)

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities including, but not limited to bending, lifting, and working.

33. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

34. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

35. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent time off from work to care for and treat for his serious health conditions, light duty restrictions, and the ability to ice his back periodically as needed.

36. Defendant failed to properly accommodate Plaintiff by assessing attendance points against him for taking intermittent time off to care for and treat his serious medical conditions.

37. Plaintiff objected to the aforementioned instances of disparate treatment, disability discrimination, and retaliation.

38. Plaintiff was abruptly terminated from his employment with Defendant shortly after requesting/utilizing reasonable accommodations and inquiring about how much time he had

remaining and/or the amount of attendance occurrences he had been assessed in case he needed to take additional time off in the future to care for and treat his aforesaid serious health conditions.

39. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated because of (1) his known, perceived and/or record of disabilities; (2) in retaliation for requesting/utilizing reasonable medical accommodations; (3) his expressed objections to unfair treatment as a result of his disabilities and/or requests for accommodations; and (4) Defendant's failure to properly accommodate his health conditions (set forth *supra*).

40. These actions as aforesaid constitute violations of the ADA.

## COUNT II
## Common-Law Wrongful Discharge
### (Public Policy Violation)

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

43. It is against Pennsylvania's public policy for an employee to be terminated for making worker's compensation claims and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

44. The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and his termination creates an inference that his termination was in retaliation for making such claims.

45. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 24, 2021